UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lazaro Despaigne Borrero, #173537,

Plaintiff,

v.

Bob Coolidge, Tom Jones, John Doe, Tracey Juneau, Greg Smith, Michael Parks, Randolph Hartnett, and Bert Mohs, et al.,

Defendants.

Civil No. 01-86 (RHK/FLN)

**REPORT AND RECOMMENDATION**

**THIS MATTER** came before the undersigned United States Magistrate Judge on Plaintiff's Motion for Temporary Restraining Order [#16], for Preliminary Injunction [#16-2], and for Temporary Restraining Order and Preliminary Injunction [#21]. For the reasons discussed below, the Court will recommend that all of these Motions be denied.

## I. BACKGROUND

Plaintiff Lazaro Despaigne Borrerorero has been detained by the Immigration and Naturalization Service ("INS") and was housed at the Minnesota Correctional Facility in Rush City, Minnesota ("MCF"), at the time that the instant Complaint was filed. Plaintiff's Memorandum of Law in Support of Motion for TRO and Preliminary Injunction (hereinafter "Plaintiff's Memorandum") at 1. In the action underlying Plaintiff's motions for injunctive relief, Plaintiff alleges "unwarranted mistreatment, harassment, unconstitutional racial discrimination, and deprivation of the Freedom of Speech Clause of the First Amendment, and Confinement in Segregation in Violation of the Due Process Clause of the Fifth and Fourteenth Amendments and

AUG 0 7 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Cruel and Unusual Punishment in Violation of the Eighth Amendment Clause to the United States Constitution." Id. Plaintiff seeks injunctive relief to ensure that no further retaliatory action by correctional officials is taken against him. Id.

The evidence submitted by Plaintiff in support of his Motions comes is found in photocopies of various "kites" filed by Plaintiff. (Id. at Appendix). The first such kite, dated October 22, 2000, alleges cruel and unusual punishment and racial discrimination at MCF. (Id.). In the kite, Plaintiff stated that he would file a federal suit unless: (1) the entire INS unit was permitted to engage in "flag time" exercise; (2) mistreatment and harassment by prison guards changed; and (3) human rights were respected. (Id.). Warden Mohs responded to the kite on October 24, 2000, by stating that the amount of flag time permitted in Plaintiff's unit does not constitute cruel and unusual punishment. (Id.). Warden Mohs suggested that if Plaintiff wished to increase the amount of time that he was out of his cell, he should participate in education and/or work programs. (Id.).

On October 30, 2000, Plaintiff filed a kite challenged the prison's policy of not giving prisoners the envelope that their legal mail came in. (Id.). Warden Mohs responded that a new prison policy had been implemented stopping prisoners from keeping their legal mail envelopes out of concern that contraband would be submitted with legal mail. (Id.). Warden Mohs offered an alternative in the form of a photocopy of the envelope. (Id.). In a follow-up kite, Plaintiff requested a copy of the new envelope policy. (Id.). No response to this kite is included in the record.

On November 8, 2000, Plaintiff filed a kite alleging that phone rates for prisoners were too high and that the pre-recorded message which precedes inmate telephone calls is too long, causing inmates to incur needless telephone expenses. (Id.). John King, an MCF employee, responded that he had a degree of sympathy for Plaintiff's situation but that the rates and message time were out of

MCF's control. (Id.).

On November 9, 2000, Plaintiff filed a kite seeking to ascertain why the prison double-bunked its prisoners when empty cells were available. (Id.). Plaintiff hypothesized that the prison's intent was for the INS detainees to "either kill each other or to create some type of homosexuality thing." (Id.). In addition, Plaintiff complained that his roommate was causing him to lose sleep. (Id.). Warden Mohs responded that double-bunking is standard throughout prisons in the United States and that the facility did not wish to establish a precedent of single-bunking detainees. (Id.).

Plaintiff filed a kite on November 23, 2000, protesting that the heat was intentionally cut off in the cells in the INS unit, resulting in cold water to the showers. (Id.). When a detainee other than Plaintiff protested to a guard about the cold water, the guard responded by stating that foreign people detained in the prison do not need heat or hot water because they lack such amenities in their homelands and sleep on the floor like animals. (Id.). When Plaintiff attempted to address these issues with a Lieutenant, he was denied the opportunity to converse and was instead peremptorily ordered to "switch in," which the Court infers to be a prison procedure for transferring prisoners from one area to another. (Id.). On the same kite, Plaintiff protested the treatment of a mentally ill detainee who was physically abused for taking a shower in the wrong area. (Id.).

Bert Mohs, Warden of MCF - Rush City, responded to Plaintiff's November 23, 2000, kite by noting that what Plaintiff perceived to be physical abuse was in fact merely correctional officers instructing a different detainee to shower in the correct area of the unit. (Id.). Furthermore, Warden Mohs denied the existence of deliberate indifference in treatment or unlawful treatment of anyone in the facility. (Id.).

On December 7, 2000, Plaintiff repeatedly called Officer Coolidge a "maricon." (Exh. A to the Park Aff.) The definition of "maricon" in the American Heritage Spanish Dictionary is "homosexual." (Id.). Plaintiff was informed that these events warranted a hearing to determine if Plaintiff had violated Disciplinary Rule 30, "Abuse/Harassment." (Id.). The hearing was scheduled for December 11, 2000. (Id.). At the hearing, Officers Coolidge and T. Jones both testified that Plaintiff had called Coolidge a "maricon." (Exh. B to the Park Aff.). In finding a violation, Hearing Officer Randolph Hartnett found Plaintiff guilty of the offense and deemed it irrelevant that neither of the disciplinary officers was fluent in Spanish. (Id.). The Hearing Officer sentenced Plaintiff to thirty days in administrative segregation. (Id.). The Hearing Officer's findings and sentence were affirmed on appeal. (Exh. C to the Park Aff.).

Plaintiff believes that Officer Shannah Heat in particular has discriminated against him on the basis of race, and harassed and provoked him. (Borrero Mot. App.). In a kite dated February 5, 2001, attached to Plaintiff's Motion, he protested that Officer Heat ordered Plaintiff to switch out of his cell and to sit on a table. (Id.). Officer Heat then entered Borrero's cell and began to read his legal papers and confidential legal mail. (Id.). Officer Heat also searched the cell. (Id.). Officer Heat then conspired with other officers to fabricate evidence justifying sequestration of Plaintiff in solitary confinement. (Id.). Plaintiff alleges that these actions were wrongful because legal mail is confidential and because Officer Heat was not permitted to enter his cell on her own. (Id.).

In the same kite, Plaintiff also alleged that Officer Liebel grants greater privileges to INS detainees of Vietnamese, Laotian, and Cambodian descent than he or she does to detainees from Cuba and Africa. (Id.). These greater privileges include permitting them to access any area in the unit at will. (Id.). Plaintiff alleges that Cuban or African detainees attempting to exercise similar

rights will be either written up or sent to "the hole." (Id.).

Plaintiff proposed that the situation could be remedied by transferring Officers Heat and Liebel out of the INS unit. (Id.). Plaintiff received a response to the kite on February 12, 2001, which stated that all officers are required to quickly look through papers while conducting a search, and instructing Plaintiff to discuss the situation further with Lieutenant Yozamp. (Id.).

## II. DISCUSSION

A court considers four factors in determining whether to issue a temporary restraining order ("TRO") or a preliminary injunction. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981); Bloom v. O'Brien, 841 F.Supp. 277, 279 (D. Minn. 1993). These factors include:

1. Whether there is a substantial threat that the plaintiff will suffer irreparable harm if relief is not granted;

2. Whether the irreparable harm to the plaintiff outweighs any potential harm that granting a preliminary injunction may cause the defendant;

3. Whether there is a substantial probability that the plaintiff will prevail on the merits;

4. The nature of the public interest in the matter.

Id.. The plaintiff bears the burden of proof on all factors. Bloom, 841 F.Supp. at 279 (citing Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987)).

Plaintiff is unable to carry his burden as to any of the four factors. With regard to the first factor, Plaintiff cannot show that he will suffer irreparable harm if his requested relief is not granted, if for no other reason than that he is no longer an inmate at MCF Rush City. Even considering the remaining claims independent of the fact that Plaintiff is no longer at Rush City, it appears that the most serious action taken against Plaintiff – assigning him to 30 days in administrative segregation

for abuse and harassment in violation of Disciplinary Rule No. 30 – came after a full round of hearings and appeals during which credible evidence demonstrated that Plaintiff was guilty of the offense. See Exhibits A, B, C, to the Park Affidavit.

Viewing all the facts together, Plaintiff has not proven that there is a substantial threat of retaliation against him if his requested relief is not granted. While Plaintiff has protested numerous actions taken by MCF against him and other members of the prison population, the documents submitted demonstrate that there was a reason other than retaliation for each of the actions taken toward Plaintiff. There is simply no evidence of unwarranted mistreatment, harassment, racial discrimination, denial of freedom of speech, or administrative confinement sufficient to meet the stringent standards necessary for a preliminary injunction or temporary restraining order. While Plaintiff's reiteration of the "cold water" comment made to another inmate does not raise the Court's confidence in the idea that the environment at MCF is not without its problems, the comment does not take away from the fact that every allegedly harassing or provoking action taken against Plaintiff was explained by MCF staff.

With regard to the second Dataphase factor, the non-existent or small threat of substantial harm to the Plaintiff is easily outweighed by the potential harm to Defendants if Plaintiff's requested relief is granted. At a minimum, a chilling effect would be exerted on Defendants in their efforts to discipline the inmate population. The potential harm from such an action outweighs the harm from the readily explainable actions taken by Defendants against Plaintiff.

The third Dataphase factor is whether there is a substantial probability that Plaintiff will prevail on the merits. The evidence produced by Plaintiff thus far does not suggest that such a substantial probability exists.

To the extent that there is a public interest in this case, it appears to favor Defendants and their stated goal of maintaining a disciplined prison. Had Plaintiff provided facts demonstrating a culture of harassment and racial discrimination at MCF, the public's interest in the enforcement of its civil rights statutes and in the accountability of its public officials might well have outweighed the goal of prison discipline. The dearth of alleged facts supporting Plaintiff's claims, however, do not warrant such a finding.

## III. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Temporary Restraining Order [#16-1] be **DENIED**;
2. Plaintiff's Motion for Preliminary Injunction [#16-2] be **DENIED**;
3. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [#21-1] be **DENIED**;

Dated: August 6, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500